UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CLINTON HARRIS,<br><br>     Plaintiff,<br><br>v.<br><br>AUDI NASHVILLE et al.,<br><br>     Defendants. | Case No. 3:24-cv-00791<br><br>Judge Aleta A. Trauger<br>Magistrate Judge Alistair E. Newbern |

To:     The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

This civil action arises out of pro se Plaintiff Clinton Harris's attempt to finance a vehicle from Defendant Audi Nashville (Audi) on July 1, 2023. (Doc. No. 23.) Audi and Defendant American Credit Acceptance, LLC (ACA) have filed motions to dismiss Harris's amended complaint. (Doc. Nos. 25, 29.) Harris has filed a motion arguing that Audi's motion to dismiss is untimely (Doc. No. 27) and a motion asking the Court to enter judgment in his favor against Audi (Doc. No. 28). For the reasons that follow, the Magistrate Judge will recommend that the Court deny Harris's motions, deny Audi's motion to dismiss, and grant ACA's motion to dismiss.

## I.     Background

### A.     Factual Background

Harris alleges that, on July 1, 2023, he went to Audi's dealership in Nashville "to extend his credit." (Doc. No. 23, PageID# 99.) Harris spoke to an Audi sales representative named Joe,

who, like Harris, is an African American man.[1] (Doc. No. 23.) Harris "informed" Joe "that a consumer credit transaction was taking place and that cash would not be involved." (*Id.* at PageID# 99.) He also told Joe "that he wanted in-house financing and did not consent to sending his information to outside banks and affiliates." (*Id.*) "Joe . . . said, 'Okay'." (*Id.*)

Audi nevertheless "ran" Harris's "credit," and then "the sales manager, Scott Weissman ([a] [C]aucasian male), returned with approval from American Credit [ ] Acceptance with a conditional offer of a $36,000[.00] cash down payment and APR [annual percentage rate] at 18%." (*Id.*) "Harris informed the finance manager that the finance charge covered the down payment." (*Id.*) Weissman "stepped away to get the general manager of the dealership." (*Id.*) General Manager Robert Hartman, a Caucasian man, came over and Harris "asked him why Audi didn't finance the loan; [Hartman] stated, 'We don't do in-house financing.'" (*Id.*) Harris informed Hartman "that Joe had already . . . confirmed that in-house financing was available" and that "[a]n agent over the phone confirmed this information as well." (*Id.* at PageID# 100.) Harris alleges that Hartman "denied that Audi Nashville ran [Harris's] credit" even though "there's a hard inquiry on the consumer report." (*Id.* at 99.)

---

[1] The amended complaint (Doc. No. 23) does not identify Harris's race. However, in his responses in opposition to Audi's and ACA's motions to dismiss, Harris identifies himself as "African American" (Doc. No. 28, PageID# 116) and as "a black man with locs" (Doc. No. 31, PageID# 136). In light of Harris's pro se status, these allegations are properly included in the Court's analysis of the defendants' pending motions to dismiss. *See Duckett v. Cumberland Cnty. Sheriff Dep't*, Case No. 2:18-cv-00024, 2020 WL 4722429, at *4 (M.D. Tenn. July 17, 2020), *report and recommendation adopted*, 2020 WL 4718756 (M.D. Tenn. Aug. 13, 2020); *see also Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999) (holding that the district court should have "read all of [plaintiff's] filings together before dismissing [the] case"); *Harding v. Davidson Cnty. Sheriff's Off.*, No. 3:13-cv-0449, 2013 WL 5774937, at *3 (M.D. Tenn. Oct. 25, 2013) (rejecting argument that "factual allegations made in [a pro se] plaintiff's response in opposition to [a] motion to dismiss" should not be considered in ruling on the motion to dismiss).

### B.     Procedural History

Harris initiated this action on June 28, 2024, by filing a complaint against Audi and ACA and paying the Court's civil filing fee. (Doc. No. 1.) On the same date, Harris requested, and the Clerk of Court issued, summonses to Audi and ACA. (Doc. No. 2.) Harris filed proof of service affidavits on July 19, 2024, stating that he served the summonses on Audi and ACA via certified mail. (Doc. Nos. 5, 6.)

The Court referred this action to the Magistrate Judge to dispose or recommend disposition of all pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 13.)

ACA appeared (Doc. No. 7) and moved for an extension of time to respond to Harris's complaint (Doc. No. 8). The Court granted ACA's motion for an extension and ordered ACA to respond to Harris's complaint by August 9, 2024. (Doc. No. 9.)

On August 6, 2024, Audi appeared and filed a motion for an extension of time to respond to Harris's complaint and stated that Harris opposed the extension. (Doc. No. 12.) On August 9, 2024, the Court granted Audi's motion for an extension and ordered Audi to respond to Harris's complaint by August 20, 2024. (Doc. No. 14.) Three days after the Court granted Audi's motion for an extension, Harris filed an "[o]bjection" to Audi's request for an extension (Doc. No. 19, PageID# 71) and also filed a motion for entry of default against Audi (Doc. No. 20). The Court treated Harris's objection "as a motion to reconsider its order granting Audi's motion" for an extension, found that "its original grant of" "the relatively modest 14-day extension Audi request[ed]" was "appropriate[,]" and denied Harris's motion for reconsideration. (Doc. No. 22.)

On August 9, 2024, ACA filed a motion to dismiss Harris's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. (Doc. No. 15.) Audi filed a Rule 12(b)(6) motion to dismiss Harris's complaint on August 14, 2024. (Doc. No. 21.)

3

On the following day, Harris "filed a 'statement of claim' (Doc. No. 23) that appear[ed] in substance to be an amended complaint." (Doc. No. 24.) The Court found that, "[b]ecause Harris filed this amended pleading within twenty-one days of the defendants filing motions to dismiss (Doc. Nos. 15, 21), he may file it as a matter of course under Federal Rule of Civil Procedure 15." (Doc. No. 24.) The Court therefore directed the Clerk of Court to docket Harris's filing as an amended complaint and terminated as moot Audi's and ACA's motions to dismiss the original complaint "without prejudice to refiling to address the amended complaint." (*Id.*)

Harris's amended complaint alleges federal statutory claims under the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681, et seq., the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601 et seq., and the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691 et seq. (Doc. No. 23.) Harris alleges that ACA violated the FCRA, that ACA and Audi violated the TILA, and that Audi violated the ECOA. (*Id.*) The amended complaint also alleges that Audi discriminated against Harris based on his race and violated Harris's "right to privacy" by sharing his "information with 3 of their affiliates without [Harris's] consent." (*Id.* at PageID# 100.) Harris requests money damages and "[r]emov[al] [of] the hard inquiries from [his] consumer reports." (*Id.* at ¶ 2.) He also "requests that the defendants be fined for conspiring against [his] rights [in violation of] 18 U.S. Code 241 and committing security and commodities fraud [in violation of] 18 U.S. Code 1348(2)." (*Id.* at ¶ 4.)

On August 29, 2024, ACA filed a motion to dismiss the claims against it in Harris's amended complaint under Rule 12(b)(6) for failure to state claims for which relief can be granted. (Doc. Nos. 25, 26.) Harris responded in opposition to ACA's motion to dismiss (Doc. No. 28), and ACA filed a reply (Doc. No. 32).

On September 12, 2024, Harris filed a "Motion To Dismiss Request For Extension Of Time" arguing that Audi had failed to file a timely response to his amended complaint and that the Court should "deny any request for an extension of time that may be submitted on behalf of Audi . . . ." (Doc. No. 27, PageID# 114.) Harris also filed a "Motion for Relief To Be Granted" "request[ing] that a judgment be entered in [his] favor" because Audi "ha[d] failed to respond to the amended complaint." (Doc. No. 28, PageID# 116.)

On the following day, Audi filed a second motion to dismiss Harris's claims against it. (Doc. No. 29.) Audi argues that dismissal is warranted under Rule 12(b)(6) because the amended complaint does not state claims for which relief can be granted under the TILA, the ECOA, common law, or federal criminal statutes governing securities fraud and conspiracy. (Doc. No. 29.) Audi does not address Harris's arguments about the timeliness of its response to the amended complaint. Harris filed a response in opposition to Audi's second motion to dismiss (Doc. No. 30) and a sworn affidavit with exhibits (Doc. No. 31). On September 23, 2024, Harris filed additional exhibits, including a flash drive with audio recordings of Harris's July 1, 2023 interactions with Joe, Weissman, and Hartman. (Doc. No. 34.) Audi did not file an optional reply in support of its second motion to dismiss.

On September 23, 2024, the Clerk of Court denied Harris's motion for entry of default against Audi (Doc. No. 20), finding that "Audi is not in default and has expressed a clear intent to defend this action" because Audi "entered an appearance and filed a Motion to Dismiss [Harris's] Amended Complaint." (Doc. No. 33, PageID# 147.)

## II.    Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the

plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Harris appears pro se, the Court construes his filings "'liberally'" and holds his amended complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, this lenient treatment has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012). "[C]ourts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III. Analysis

#### A. Audi's Second Motion to Dismiss (Doc. No. 29) and Harris's "Motion To Dismiss Request For Extension Of Time" (Doc. No. 27)

On the day before Audi filed its second motion to dismiss (Doc. No. 29), Harris filed a "Motion To Dismiss Request For Extension of Time" arguing that Audi had failed to file a timely response to his amended complaint and asking the Court to "deny any request for an extension of time that may be submitted on behalf of Audi Nashville." (Doc. No. 27, PageID# 114.) There is no legal basis on which the Court could preemptively deny a motion Audi had not yet made, and the Court will deny Harris's motion for that reason. However, the Court will consider Harris's timeliness argument as part of his response in opposition to Audi's second motion to dismiss.

On August 19, 2024, the Court construed Harris's "Statement Of Claim" (Doc. No. 23) as an amended complaint and terminated as moot Audi's first motion to dismiss (Doc. No. 21) without prejudice to refiling. (Doc. No. 24.) Audi had fourteen days from the date of the Court's order to file and serve a response to Harris's amended complaint. *See* Fed. R. Civ. P. 12(a)(4)(A) (providing that "if the court denies the motion [to dismiss] . . . , the responsive pleading must be served within 14 days after notice of the court's action"); Fed. R. Civ. P. 15(a)(3) ("Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later."). Audi's response to Harris's amended complaint was therefore due on September 3, 2024. *See* Fed. R. Civ. P. 6(a)(3)(A) (providing that, "if the last day" of a time period is a "legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday"). Audi did not file and serve its second motion to dismiss until September 13, 2024. (Doc. No. 29.)

Rule 6(b)(1)(B) provides that, when "an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Audi has not moved for an extension, responded to Harris's argument that it had not filed a timely response to his amended complaint, or otherwise addressed why it filed its second motion to dismiss ten days late. Accordingly, there is no basis on which the Court could find that Audi "failed to act because of excusable neglect" as required by Rule 6(b)(1)(B) to extend Audi's deadline for responding to the amended complaint. The Court therefore should deny Audi's second motion to dismiss as untimely.[2]

### B.     Harris's "Motion For Relief To Be Granted" (Doc. No. 28)

Before Audi filed its second motion to dismiss, Harris filed a "Motion For Relief To Be Granted" "request[ing] that a judgment be entered in [his] favor" against Audi because "Audi Nashville has failed to respond to the amended complaint." (Doc. No. 28, PageID# 116.) To the extent this motion can be construed as a motion for entry of default judgment against Audi under Rule 55(b), that relief is not available. *See McGuire v. Highmark Holdings*, Case No. 3:19-cv-00902, 2020 WL 6273923, at *1 (M.D. Tenn. Oct. 26, 2020). Entry of default under Rule 55(a) is prerequisite to entry of default judgment under Rule 55(b). *See id.* The docket reflects that the

---

[2]     There are circumstances in which a court may, in its discretion, "construe a premature Rule 12(c) motions [*sic*] as if it were brought under Rule 12(b), and a late Rule 12(b) motion, or a Rule 12(b) motion that implicates affirmative defenses, as if it were brought under Rule 12(c)." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368 (3d ed. suppl. Aug. 21, 2024). However, courts generally do so when a defendant files a Rule 12 motion after answering the plaintiff's complaint, which Audi did not do here. *See id.* (collecting cases). Further, "at no point did [Audi] move for relief under Rule 12(c)[,]" even after Harris put Audi on notice that it had missed the deadline to file a Rule 12(b) motion. *Schirmer v. Powell Cnty. Det. Ctr.*, 685 F. Supp. 3d 459, 465 (E.D. Ky. 2023) (dismissing untimely Rule 12(b) motion without converting it to a Rule 12(c) motion).

Clerk of Court denied Harris's Rule 55(a) motion for entry of default against Audi. (Doc. No. 33.) Harris therefore has not shown that he is entitled to default judgment against Audi under Rule 55(b).

### C.     ACA's Motion to Dismiss (Doc. No. 25)

ACA timely filed its motion to dismiss on August 29, 2024. (Doc. No. 25.) The Court therefore considers the merits of ACA's arguments for dismissing Harris's FRCA and TILA claims against it.

#### 1.     FCRA Claim

The FCRA "is designed to accomplish dual goals: 'to promote efficiency in the Nation's banking system and to protect consumer privacy.'" *Bickley v. Dish Network, LLC*, 751 F.3d 724, 728 (6th Cir. 2014) (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001)). "Towards this end, the [FCRA] regulates the permissible uses of 'consumer reports,' which summarize credit history and credit worthiness, and creates a private right of action allowing injured consumers to recover for negligent and willful violations of the [FCRA]." *Id.* (first quoting 15 U.S.C. § 1681b; then citing 15 U.S.C. § 1681n; and then citing 15 U.S.C. § 1681o); *see also Barkho v. Homecomings Fin., LLC*, 657 F. Supp. 2d 857, 864 (E.D. Mich. 2009) (explaining that the FCRA places requirements and duties on consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies).

Harris alleges that ACA "pulled [Harris's] credit report without permissible purpose, causing [his] credit score to decline" in violation of § 1681n (willful violations) and § 1681o (negligent violations). (Doc. No. 23, PageID# 97, ¶ 2.a.) "To maintain a claim for improper use of a credit report, the plaintiff must [allege] that the defendant acted with the specified level of culpability" and "must also show three elements: '(i) that there was a "consumer report" within the meaning of the statute; (ii) that the defendant used or obtained it; *and* (iii) that the defendant

9

did so without a permissible statutory purpose.'" *Bickley*, 751 F.3d at 728 (quoting *Godby v. Wells Fargo Bank, N.A.*, 599 F. Supp. 2d 934, 937 (S.D. Ohio 2008)). ACA argues that Harris has not alleged that it acted negligently or willfully in pulling his credit report.

The FCRA provides that "any consumer reporting agency may furnish a consumer report" "[t]o a person which it has reason to believe" "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to . . . the consumer[.]" 15 U.S.C. § 1681b(a)(3)(A). Harris's amended complaint alleges that, at Audi's request, ACA "pulled [Harris's] credit report without permissible purpose[.]" (Doc. No. 23, PageID# 97, ¶ 2.a.) But, as ACA points out (Doc. No. 26), Harris has not alleged any facts that would allow the Court to draw an inference that ACA "had reason to believe that [he] did not wish the dealership to file an application on [his] behalf." *Wells v. Craig & Landreth Cars, Inc.*, 474 F. App'x 445, 447 (6th Cir. 2012). Harris has not responded to this argument. The Court should therefore find that Harris's "allegations are insufficient" to support his FCRA claim against ACA "because they do not indicate that [ACA] intended to violate [his] rights under the [FCRA] or that it did so recklessly." *Id.*

### 2. TILA Claims

Congress passed the TILA "in 1968 in an effort to remedy problems that developed as a result of the growing consumer credit market." *Brown v. Bassett Used Cars LLC*, 686 F. Supp. 3d 589, 592 (E.D. Mich. 2023) (citing *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 363–64 (1973)). "One such problem was the 'divergent, and at times, fraudulent, practices by which consumers were informed of the terms of the credit extended to them' which prevented them from 'shopping for the best terms available.'" *Id.* (quoting *Mourning*, 411 U.S. at 363); *see also Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832, 840 (E.D. Mich. 2010) ("The [TILA] has a dual purpose: 'to facilitate the consumer's acquisition of the best credit terms available; and to protect

the consumer from divergent and at times fraudulent practices stemming from the uniformed use of credit.'" (quoting *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1040 (6th Cir. 1984))). Among other requirements, "the TILA created specific uniform disclosure rules to 'assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'" *Brown*, 686 F. Supp. 3d at 592 (quoting 15 U.S.C. § 1601(a)).

Harris alleges that ACA violated three provisions of the TILA. (Doc. No. 23.) First, he alleges that ACA violated 15 U.S.C. § 1605, which governs determination of finance charges, by "[d]emanding a downpayment when the down payment is included in the finance charge." (*Id.* at PageID# 98, ¶ 5.a.) Second, Harris alleges that "[t]he annual percentage rate" was not "determined in accordance with the Bureau[ ] [of Consumer Financial Protection's] regulations" as required by § 1606. (*Id.* at ¶ 5.b.) And third, he alleges that he "did not receive any benefits, which is considered unauthorized use of his credit card" in violation of § 1602(p). (*Id.* at ¶ 5.c.)

### a.    Consumer Credit Transactions Under the TILA

ACA argues as a threshold issue that all Harris's TILA claims "necessarily fail[ ] as a matter of law" because Harris "does not allege that he ever entered into a consumer credit transaction with ACA and, in fact, he did not." (Doc. No. 26, PageID# 111.) ACA relies on *Sirote v. BBVA Compass Bank*, 857 F. Supp. 2d 1213, 1219 (N.D. Ala. 2010), for the proposition that "TILA's various requirements (and potential claims for the violation thereof) are only triggered when a consumer credit transaction is entered." (*Id.* at PageID# 110.) But *Sirote* addressed different circumstances. There, the plaintiff alleged that someone else had forged his signature on mortgage loan documents and asserted TILA claims against the bank that had notarized the forged signature and provided the loan. 857 F. Supp. 2d at 1217–18. The defendant bank argued that the plaintiff did "not have standing to pursue his TILA claim because he disputes that he actually

obtained a loan from [the bank]." *Id.* at 1218. The defendant argued that the plaintiff had "set himself a trap"—he alleged "that the Deeds of Trust executed in 2003 and 2006 were forgeries, so he never actually intended to borrow any money from [the bank]. The catch is that, if plaintiff never actually engaged in a loan transaction with [the bank], he cannot assert a claim under the TILA." *Id.*

The implication of ACA's argument that Harris did not enter into a consumer credit transaction is that, because Harris did not accept ACA's financing offer, there was not a transaction for purposes of the TILA. Harris responds that the TILA extends to "any transaction in which credit is offered or extended to an individual for personal, family, or household purposes" and that "[a] consumer credit transaction took place once ACA ran [his] credit and sent a conditional acceptance offer with the terms listed." (Doc. No. 28, PageID# 118." Harris has the better argument. One of the TILA's purposes is to enable consumers to "shop[ ] for the best terms available." *Brown*, 686 F. Supp. 3d at 592 (quoting *Mourning*, 411 U.S. at 363). To that end, the statute's definitions contemplate that a consumer credit transaction encompasses "offer[s]" of credit as well as "exten[sions]" of credit. 15 U.S.C. § 1602(i). Specifically, the TILA provides that:

> The adjective "consumer", used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

*Id.* The amended complaint, construed in the light most favorable to Harris, plausibly alleges that ACA offered financing terms to Harris through Audi. (Doc. No. 23.) ACA therefore has not shown that it is entitled to dismissal of Harris's TILA claims against it on this ground.

### b.    Harris's § 1605 Claim

ACA argues that Harris's TILA claim under § 1605 fails because that section "does not state that a down payment should be included in the finance charge" and "courts have repeatedly

held that requiring a cash down payment does not violate [the] TILA." (Doc. No. 26, PageID# 111.) Harris responds that "[§] 1605(a) . . . tells us that the sum of all charges is included in the finance charge." (Doc. No. 28, PageID# 118.) Section 1605(a) provides that:

> Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction . . . . Examples of charges which are included in the finance charge include any of the following types of charges which are applicable:
>
> **(1)** Interest, time price differential, and any amount payable under a point, discount, or other system of additional charges.
>
> **(2)** Service or carrying charge.
>
> **(3)** Loan fee, finder's fee, or similar charge.
>
> **(4)** Fee for an investigation or credit report.
>
> **(5)** Premium or other charge for any guarantee or insurance protecting the creditor against the obligor's default or other credit loss.
>
> **(6)** Borrower-paid mortgage broker fees, including fees paid directly to the broker or the lender (for delivery to the broker) whether such fees are paid in cash or financed.

15 U.S.C. § 1605(a)(1)–(6). Thus, ACA is correct that § 1605(a) does not expressly list a cash down payment as an example of the type of charge that must be included in the finance charge. And a cash down payment is not a charge "incident to the extension of credit." *Id.* § 1605(a). Harris therefore has not stated a TILA claim against ACA under § 1605. *See, e.g.*, *Desty v. Exeter Fin., LLC*, Civ. Action File No. 1:24-CV-02227, 2024 WL 4648252, at *5 (N.D. Ga. Oct. 9, 2024) ("TILA does not prohibit a down payment."); *Butler v. Global Lending Servs.*, Civ. Action No. 22-cv-01938, 2023 WL 4948312, at *6 (D. Md. Aug. 3, 2023) (denying TILA claim where "[p]laintiff

point[ed] to no law or facts to support her view that [defendant] could not impose a finance charge on her auto loan[ ] because she made a cash down payment to purchase her vehicle").

### c.    Harris's § 1606 Claim

Harris also cites § 1606 of the TILA in arguing that ACA violated the statute. Section 1606 of the TILA addresses "[d]etermination of annual percentage rate" and provides that:

**(a) "Annual percentage rate" defined**

The annual percentage rate applicable to any extension of consumer credit shall be determined, in accordance with the regulations of the Bureau,

(1) in the case of any extension of credit other than under an open end credit plan, as

(A) that nominal annual percentage rate which will yield a sum equal to the amount of the finance charge when it is applied to the unpaid balances of the amount financed, calculated according to the actuarial method of allocating payments made on a debt between the amount financed and the amount of the finance charge, pursuant to which a payment is applied first to the accumulated finance charge and the balance is applied to the unpaid amount financed; or

(B) the rate determined by any method prescribed by the Bureau as a method which materially simplifies computation while retaining reasonable accuracy as compared with the rate determined under subparagraph (A).

(2) in the case of any extension of credit under an open end credit plan, as the quotient (expressed as a percentage) of the total finance charge for the period to which it relates divided by the amount upon which the finance charge for that period is based, multiplied by the number of such periods in a year.

15 U.S.C. § 1606(a)(1)–(2). ACA argues that Harris fails to state a claim under this section because the amended complaint "does not allege that he entered into a consumer credit transaction, does not allege what the annual percentage rate for that nonexistent transaction was, and does not allege how that nonexistent rate deviated from any regulations or TILA requirements." (Doc. No. 26, PageID# 112.) The Court has already found that the amended complaint adequately alleges a consumer credit transaction within the meaning of the TILA. The amended complaint also alleges

that ACA offered Harris financing terms including "APR at 18%." (Doc. No. 23, PageID# 99.) However, the amended complaint does not allege any facts that would support an inference that ACA violated § 1606. Harris therefore has not stated a plausible claim for relief under § 1606.

### d.    Harris's § 1602(p) Claim

Harris's third asserted TILA violation against ACA is that ACA violated § 1602(p) because Harris "did not receive any benefits" when ACA ran his credit and, under TILA, ACA's actions are "considered unauthorized use of [Harris's] credit card." (Doc. No. 23, PageID# 98, ¶ 5.c.) Harris alleges, for purposes of this claim, that his "social security card is a credit card pursuant to 15 U.S.[C.] [§] 1602(l)." (*Id.*) Section 1602(l) states that "[t]he term 'credit card' means any card, plate, coupon book or other credit device existing for the purpose of obtaining money, property, labor, or services on credit." 15 U.S.C. § 1602(l). Section 1602(p) states that "[t]he term 'unauthorized use,' as used in section 1643 of this title, means a use of a credit card by a person other than the cardholder who does not have actual, implied, or apparent authority for such use and from which the cardholder receives no benefit."[3] *Id.* § 1602(p). ACA argues that Harris's allegation that his "social security number is a line of credit [is] 'utterly frivolous.'" (Doc. No. 26, PageID# 112.) Harris responds that he has adequately stated a claim for violation of § 1602 because his "social security number" is "on a card" and "used to obtain things on credit[.]" (Doc. No. 28, PageID# 117.) Harris's "argument is based on a misreading of the statute." *Rosario v. City of N.Y. Comptroller*, No. 23-CV-1775, 2023 WL 3724812, at *3 (S.D.N.Y. May 30, 2023). A social security card "does not constitute a 'credit card' within the meaning of the TILA, because it is not a 'device existing for the purpose of obtaining money, property, labor, or services on

---

[3]     Section 1643 describes limits on credit card holders' liability "for the unauthorized use of a credit card . . . ." 15 U.S.C. § 1643(a)(1).

15

credit,' 15 U.S.C. § 1602(l)." *Id.* ACA is therefore entitled to dismissal of all Harris's TILA claims against it.

## IV.    Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Harris's "Motion To Dismiss Request For Extension Of Time" (Doc. No. 27) be DENIED; that Harris's "Motion For Relief To Be Granted" (Doc. No. 28) be DENIED; that Audi's second motion to dismiss (Doc. No. 29) be DENIED as untimely; and that ACA's motion to dismiss (Doc. No. 25) be GRANTED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 27th day of January, 2025.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge