IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **CLINTON HARRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:24-cv-00791** |
| | ) | **Judge Aleta A. Trauger** |
| **SAI NASHVILLE MOTORS, LLC d/b/a AUDI NASHVILLE,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM & ORDER**

Before the court are three sets of Objections seeking review of non-dispositive orders entered by the Magistrate Judge: (1) plaintiff Clinton Harris's Objection ("First Objection") (Doc. No. 129) to the Magistrate Judge's Memorandum Order dated April 13, 2026 ("April 13 Order") (Doc. No. 128); (2) the plaintiff's Objection ("Second Objection") (Doc. No. 140) to the Magistrate Judge's Memorandum Order entered May 14, 2026 ("May 14 Order") (Doc. No. 139); and (3) the plaintiff's Objection ("Third Objection") (Doc. No. 174) to Orders entered by the Magistrate Judge on July 16, 2026 ("July 16 Order") (Doc. No. 171) and July 21, 2026 ("Reconsideration Order") (Doc. No. 173). The defendant, SAI Nashville Motors, LLC d/b/a Audi Nashville ("Audi" or "Audi Nashville") filed a Response only to the Third Objection (Doc. No. 177). The plaintiff filed a Reply in further support of the Third Objection, along with several Supplemental Objections and Notices of Filing, with exhibits. (Doc. Nos. 178–82.)

For the reasons set forth herein, all three Objections will be overruled, and the underlying orders will be affirmed in their entirety. The plaintiff is encouraged to focus his attention on resolving his case on the merits.

## I. STANDARD OF REVIEW

Within fourteen days after being served with a magistrate judge's order on a matter not dispositive of a party's claim or defense, any party "may serve and file objections" to the order. Fed. R. Civ. P. 72(a). The district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any [nondispositive] pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

"This standard requires the District Court to review findings of fact for clear error and to review matters of law *de novo*." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019). A legal conclusion is contrary to law if it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* "A [factual] finding is 'clearly erroneous' when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (citation omitted).

Review under the "clearly erroneous" standard "provides considerable deference to the determinations of magistrates." *Bonasera v. Penn. Nat'l Mut. Cas. Ins. Co.*, No. 2:19-cv-3817, 2021 WL 1785618, at *1 (S.D. Ohio May 5, 2021) (quoting *Langenfeld v. Armstrong World Indus., Inc.*, 299 F.R.D. 547, 550 (S.D. Ohio 2014)) (internal quotation marks omitted). Magistrate judges "have broad discretion to regulate nondispositive matters." *Sherrod v. Enigma Software Grp. USA, LLC*, No. 2:13-CV-36, 2014 WL 309948, at *2 (S.D. Ohio Jan. 28, 2014) (quoting *Carmona v. Wright*, 233 F.R.D. 270, 276 (N.D.N.Y. 2006)). Reversal is typically warranted only if that discretion is abused. *Id.*; *see also* 12 Fed. Prac. & Proc. Civ. § 3069 (3d ed.) ("In sum, it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge.").

## II. BACKGROUND

The plaintiff initiated this lawsuit in June 2024 and was permitted to file his Second Amended Complaint ("SAC") (Doc. No. 53) in April 2025. His claims, as summarized in the Preliminary Statement on the first page of the SAC, arise from Audi's allegedly "deceptive and discriminatory business practices, including false advertising regarding financing options, unauthorized access to Plaintiff's credit report, and racially disparate treatment during a vehicle financing inquiry." (SAC at 1.) More specifically, Harris alleges that (1) he viewed an online advertisement, which referenced Audi Financial Services (SAC "Factual Allegations" ¶ 4; SAC Ex. C, Doc. No. 53 at 21); (2) he engaged in an online chat (using the name "Brittany Mosley"), during which he was told that Audi offers in-house financing of vehicle purchases (SAC "Factual Allegations" ¶ 2; SAC Ex. A, Doc. No. 53 at 17–18); and (3) he discussed financing options with Audi employees, in which he "declined to share his private information to outside banks and affiliates" (SAC ¶¶ 3, 5, 8, 10, 12; *see also* Doc. No. 101 (Notice of Filing audio file); Doc. No. 101-1 (partial transcript of audio file).) Despite that directive, Audi allegedly submitted a financing request to outside banks.

As the Magistrate Judge succinctly summarized Harris's claims, Harris "is suing [Audi] over a credit check that occurred on July 1, 2023. Harris has asserted multiple theories of liability, but the core of his allegations concerns how Audi Nashville induced him to let the credit check happen." (Doc. No. 128 at 1.) Harris alleges that he told Audi that he only wanted to use Audi's in-house bank, Audi Financial Services, and did not want to go to any "other affiliates." (Doc. No. 101-1 at 1.) And Audi's salesperson allegedly agreed that they would "just submit to in-house Audi Financial and see what they say." (*Id.* at 2.) However, with that purported understanding in mind, Harris signed a credit application that included the following language:

> By signing this application:
>
> I authorize dealer and any finance company, bank or other financial institution to which the dealer submits my application ("you") to investigate my credit and employment history, verify my income, obtain credit reports, and release information about your credit experience with me as the law permits.
>
> I further authorize you to forward my application and all related information to other creditors for evaluation as a method of effectuating my request for credit.
>
> If an account is created, I authorize you to obtain credit reports for the purpose of reviewing or taking collection action on the account, or for other legitimate purposes associated with the account.

(Doc. No. 98-1 at 88.) Consistent with that language, but inconsistent with Clinton's understanding and directive, Audi apparently forwarded Clinton's application to third-party lenders. Harris believes that Audi induced him to sign the credit application under false pretenses, and the SAC includes allegations that Audi Nashville violated 15 U.S.C. § 1681q of the Fair Credit Reporting Act and is liable for damages under the private right of action provisions of 15 U.S.C. §§ 1681n and 1681o.

These allegations appear to be fairly straightforward, but the parties have been bogged down in a morass of discovery disputes since shortly after the filing of the SAC. As relevant here, first, Harris filed a "Consolidated Rule 37 Motion to Compel Discovery" (Doc. No. 118), which asked the court to (1) compel the depositions of non-party Sonic Automotive executives Jeff Dyke, Dino Bernacchi, and Kevin Gaither; (2) compel "customer contact information responsive to Interrogatory No. 16"; and (3) compel the remote deposition of non-party witness Joe Virgen. (Doc. No. 118 at 1.) The plaintiff filed an accompanying Proposed Protective Order governing Production of Customer Contact Information (Doc. No. 124), which presumed that the court would compel such information in response to the plaintiff's Interrogatory No. 116. The Magistrate Judge construed this Proposed Order as a motion for a protective order.

The Magistrate Judge's April 13 Order (1) denied the plaintiff's motion to compel the depositions of non-parties Dyke, Bernacchi, Gaither, and Vergen, without prejudice, solely on the basis that the plaintiff had not shown either that he had "served the individuals in question with enforceable Rule 30(b)(6) notices" or served the witnesses proper subpoenas under Rule 45 (Doc. No. 128 at 3–4, 6–7); and (2) denied the plaintiff's motion to compel information responsive to Interrogatory No. 16, because the plaintiff could not show that Audi's response to the interrogatory was technically wrong. This denial, too, was without prejudice to the plaintiff's ability to renew it if he served an amended interrogatory to which Audi objected. (*Id.* at 5–6.) The Magistrate Judge denied as moot Harris's construed motion for a protective order (Doc. No. 124). (*Id.* at 7.) The plaintiff filed his First Objection to the April 13 Order. (Doc. No. 129.)

However, he also sought and was granted leave to serve on the defendant an amended version of the interrogatory previously designated as Interrogatory No. 16. (*See* Doc. No. 133 (Memorandum Order granting in part the plaintiff's Motion for Leave (Doc. No. 130) and directing the defendant to respond within ten days after service).) Two weeks later, Harris filed his Motion to Compel Customer Complaints, Customer Contact Information, and for Sanctions—in other words, seeking to compel an answer to the revised Interrogatory No. 16 and requesting sanctions (including "referral for criminal investigation of perjury") for the refusal to produce the requested information. (Doc. No. 136.) The plaintiff also sought waiver of the Rule 37 "meet and confer" requirement, arguing that he had satisfied the requirement in connection with his prior motion to compel and that further meetings would be futile. (*Id.* at 2.) The defendant requested an extension of the time for responding to this motion, which the plaintiff opposed. (Doc. Nos. 137, 138.)

The Magistrate Judge subsequently entered the cogent and thoughtful May 14 Order ruling on the plaintiff's motion to compel a response to revised Interrogatory 16. This order directed the

parties to meet and confer in person, using as a model *Persinger v. Southwest Credit Systems, LP*, No. 1:19-cv-00853-RLY-MJD, 2019 WL 5618800 (S.D. Ind. Oct. 30, 2019). (Doc. No. 139 at 3.) The Magistrate Judge expressly recognized the plaintiff's "concerns" about the meet-and-confer requirement but nonetheless concluded that "the lingering dispute over the interrogatory in question here is sufficiently similar to the situation in *Persinger* that, despite plaintiff's concerns, the dispute will benefit from enforcing the requirement to meet and confer." (*Id.*) The May 14 Order set out a very specific time frame within which this meeting should occur and further directed the parties to file a joint discovery dispute statement following that meeting, confirming that the meeting occurred and summarizing the parties' attempts to resolve their dispute. (*Id.*) Following these efforts, the parties were to appear in person before the Magistrate Judge on June 11, 2026 for a discovery dispute conference. (*Id.*) In light of this schedule, the Magistrate Judge denied the plaintiff's motion without prejudice and denied as moot the defendant's request for an extension of the response deadline. (*Id.*)

Instead of complying with the order, the plaintiff promptly filed the Second Objection (Doc. No. 140) as well as an Emergency Motion to Stay Enforcement of the May 14 Order (Doc. No. 141). The defendant filed a Discovery Report, which reported that Harris refused to comply with the meet-and-confer requirement of the May 14 Order and seeking sanctions for that failure. (Doc. No. 142 at 1–2.) The defendant also argued that the scope of discovery allowed in *Persinger* is overly broad and disproportionate to the needs of this case. (*Id.* at 3–4.)

In response, the Magistrate Judge proceeded with the planned discovery dispute conference on June 11, 2026 and subsequently issued an order "resolv[ing] the lingering dispute over the interrogatory labeled 'Interrogatory No. 16,'" directing the defendant to respond to a modified discovery request, specifically by identifying and producing "all hard-copy and electronic

communications, received between July 1, 2020 and July 1, 2025, in which an individual asserted that the individual's credit report was accessed without their permission" and in which "a) any employee or agent of defendant responded to any complaint or review about defendant posted online; and b) the communication contains any of the following terms: 'credit report,' 'in-house financing,' 'bait and switch' (including participial variants), 'race,' 'racial,' or 'racially.'" (Doc. No. 145 at 1.) The next day, the plaintiff filed a Motion to Supplement, asking the court to supplement the June 11, 2026 Order by including a requirement that the defendant supply the "first and last name, telephone number, and email address of individuals identified in the customer complaints produced by Defendant pursuant to that Order." (Doc. No. 146 at 1.) A few days later he filed a Motion to Clarify the June 11, 2026 Order. (Doc. No. 148.) The court denied these motions without prejudice as moot. (Doc. No. 162.)

Meanwhile, the plaintiff attempted again to serve deposition subpoenas on non-party witnesses Bernacchi, Dyke, and Gaither. These non-parties (through counsel for the defendant) filed a Motion to Quash the subpoenas on the grounds that they violated Local Rule 45.01 and Federal Rule of Civil Procedure 45(d)(1) and were outside the scope of Federal Rule of Civil Procedure 26(b). (Doc. No. 150.) The non-parties also requested that the plaintiff be required to pay the costs and fees associated with the motion. (*Id.*) The Motion to Quash was supported by Declarations from the three non-parties, each of whom attested, among other things, that they were "not familiar with Clinton Harris" before being "served with a subpoena in this case." (Doc. No. 150-1, Dyke Decl. ¶ 3; Doc. No. 150-2, Bernacchi Decl. ¶ 3; Doc. No. 150-3, Gaither Decl. ¶ 3.) The defendant filed a Motion for Protective Order, asking that Harris be prohibited from issuing subpoenas without a court order and from filing any discovery motions or scheduling motions

without conferring in good faith with defense counsel in accordance with Federal Rule of Civil Procedure 37 and Local Rule 7.01(a). (Doc. No. 151.)

In response, the plaintiff filed a "Notice of Concern," in which he shared with the court his "genuine concern regarding the conduct of defense counsel." (Doc. No. 156 at 1.) In addition to other perceived instances of bad faith conduct, the plaintiff specifically pointed out that, although the three non-party witnesses who sought to quash subpoenas attested in their Declarations that they had been "served" subpoenas and that defense counsel had stated in open court, at the June 11, 2026 hearing, that all three "Sonic Automotives executives" had been served with subpoenas, the records in the plaintiff's possession demonstrated that, in fact, his efforts to serve the subpoenas on Dyke and Bernacchi had been unsuccessful. (*Id.* at 4–6.) Only Gaither had actually been served. (*Id.* at 6.)

The plaintiff filed additional motions, including a Motion to Enforce the June 11, 2026 Order and for Sanctions (Doc. No. 159); Motion for Leave to Take Second Deposition of Robert Hartman, Audi's General Manager, who had previously been deposed in July 2025 (Doc. No. 160); Motion for Leave to File Three Audio Recordings of telephone conversations documenting that the Rule 45 subpoenas had not been served on Dyke or Bernacchi (Doc. No. 161); Motion for Evidentiary Hearing (Doc. No. 164); and Motion to Strike Movants' Motion to Quash (Doc. No. 167) on the grounds that two of the movants had never actually been served a subpoena and had committed "perjury" in claiming that they had.[1]

---

[1] The three non-party witnesses, through defense counsel, subsequently filed "copies of the subpoenas that the movants believe have been issued for Dyke, Bernacchi, and Gaither," noting that, while Gaither had been formally served, Dyke and Bernacchi had only received copies of the subpoenas "via text message by a law enforcement officer who has attempting to serve the subpoenas" on them. (Doc. No. 163.)

The court promptly granted the motion for a hearing and held an in-person status conference on July 16, 2026. (Doc. No. 166.) Following that hearing, the Magistrate Judge issued the July 16 Order that, "[f]or the reasons stated at the conference, and after considering the parties' papers," (1) granted the non-party witnesses' Motion to Quash the third-party subpoenas in their entirety but denied the movants' request for costs and fees; (2) granted in part the defendant's Motion for Protective Order, specifically by requiring the plaintiff to follow the applicable federal rules, local rules, and court orders pertaining to subpoenas, discovery motions, and scheduling orders, but denied the defendant's request for costs and fees; (3) denied the plaintiff's Motion to Enforce and for Sanctions; (4) denied the plaintiff's motion for leave to depose Robert Hartman a second time; (5) granted the plaintiff's Motion for Leave to File Three Audio Recordings; and (6) denied the plaintiff's Motion to Strike. (Doc. No. 171 at 1–2.)

The plaintiff filed a Motion for Reconsideration (Doc. No. 172), which the Magistrate Judge denied on July 21, 2026 (Doc. No. 173). The plaintiff filed his Third Objection to the July 16 Order and the Reconsideration Order. (Doc. No. 174.) As noted, the defendant filed a Response to the Third Objection, following which the plaintiff filed a Reply and additional documentation in support of his Objection. (Doc. Nos. 177–82.)

On August 26, 2026, the plaintiff filed a Notice Regarding Pending Rule 72 Objections, pointing out that two of his Objections have been pending for months but asking the court to pay "particular attention" to the Third Objection. (Doc. No. 183 at 1.)[2]

[2] The plaintiff has also filed a Petition for Writ of Mandamus with the Sixth Circuit. (*See* Doc. Nos. 184, 187.)

## III. THE PLAINTIFF'S OBJECTIONS

### A. Objection to April 13 Order

The First Objection (Doc. No. 129) begins by objecting, not to the Magistrate Judge's resolution of the pending motions in the April 13 Order, but to the Magistrate Judge's characterization of the plaintiff's claims. The court finds the First Objection to be patently beside the point. It does not object to a factual finding or a legal ruling or to any actual *order* entered by the Magistrate Judge. It objects simply to the Magistrate Judge's non-binding and non-dispositive summary of the plaintiff's claims. That characterization has no bearing on the Magistrate Judge's ultimate ruling. The plaintiff, in fact, states that he "intends to follow the procedural paths outlined in Doc. 128 and reserves the right to seek further review of those rulings if necessary after completing those steps." (Doc. No. 129 at 5.)

The Objection is **OVERRULED** as without merit. The April 13 Order (Doc. No. 129) is **AFFIRMED**.

### B. Second Objection

The Second Objection (Doc. No. 140) is addressed to the May 14 Order (Doc. No. 139) and accompanied by an Emergency Motion to Stay that order (Doc. No. 141). As set forth above, however, the May 14 Order did not actually resolve the discovery dispute. Instead, it laid out a procedure for the parties and the court to follow to attempt to resolve the dispute concerning Interrogatory No. 16. The plaintiff failed to comply with that directive, but the Magistrate Judge nonetheless conducted a hearing on June 11, 2026 and *granted* the plaintiff's motion to compel, though he narrowed the scope of the interrogatory at issue.

The court finds that the plaintiff's Second Objection and his Emergency Motion to Stay were both rendered moot by subsequent proceedings. The Second Objection (Doc. No. 140) is,

therefore, **OVERRULED as moot**, and the Emergency Motion to Stay Enforcement (Doc. No. 141) is **DENIED as moot**. The May 14 Order (Doc. No. 139) is **AFFIRMED**.

### C. Third Objection

The Third Objection (Doc. No. 174) addresses both the July 16 Order (Doc. No. 171) following the status conference on the same day, disposing of a number of pending motions filed by both parties, and the Reconsideration Order (Doc. No. 173), denying the plaintiff's Motion for Reconsideration (Doc. No. 172). The plaintiff's Third Objection is primarily focused on the plaintiff's insistence that the non-party declarants (who attested that the deposition subpoenas had been "served" on them when they had not, in fact, been formally served under the rules) and defense counsel committed perjury and that the Magistrate Judge failed to fully acknowledge or sanction such perjury. Secondarily, the Third Objection focuses on the defendant's response to the revised discovery requests, which the plaintiff considers to be insufficient and incomplete. Third, he takes issue with the defendant's purported email retention policy that was raised, allegedly for the first time, in an email from defense counsel to the plaintiff on June 23, 2026. More specifically, the plaintiff argues that the July 16 Order and Reconsideration Order are "clearly erroneous and contrary to law" because (1) the Magistrate Judge failed in his duty to protect the integrity of the court and instead "permit[ed] fraud upon the court to stand" even though the "record establishes that misconduct has occurred"; (2) the Magistrate Judge's conclusion, stated in open court, that the depositions of non-parties Dyke, Bernacchi, and Gaither are irrelevant constitutes "reversible error" because a "magistrate judge managing discovery does not have authority to tell a plaintiff which witnesses are relevant to litigating his own claims" and because the conclusion was incorrect as a factual matter, as all three witnesses "have potential knowledge of the monitoring systems, complaint tracking, and corporate oversight directly relevant to Plaintiff's claims"; (3) a second deposition of Robert Hartman is "legally required" because Hartman has given sworn testimony

that directly contradicts prior sworn testimony; and (4) the Reconsideration Order addressed only one of the eight issues the plaintiff raised in his Motion for Reconsideration, which constitutes "clear error," and the Magistrate Judge's characterization of the plaintiff's perjury allegation as "frivolous" is "legally untenable." (Doc. No. 174 at 14, 16, 17.)

The plaintiff, in short, has not established that he is entitled to relief. The court has listened to the recording of the hearing in its entirety, though neither party has requested an official transcript. The Magistrate Judge heard extensive argument from both parties and thoroughly considered the facts relating to the plaintiff's perjury allegations, the plaintiff's arguments regarding the defendant's response to his revised discovery request, and his other claims. The Magistrate Judge ruled on the various pending motions while clearly explaining the reasons for his rulings. In his Third Objection, the plaintiff fails to show that the Magistrate Judge made any clearly erroneous factual findings or any legal errors.

This court finds, first, that the question of whether non-parties Dyke and Bernacchi incorrectly swore (and counsel incorrectly represented) that they were "served" with deposition subpoenas when these two witnesses instead only received informal copies via text message is not material to any matter before the court. The purported misstatements did not prejudice the plaintiff and do not constitute actionable perjury. The Magistrate Judge did not abuse his discretion in addressing this issue and did not unlawfully permit "fraud upon the court" to stand. There was no fraud on the court, and the plaintiff's insistence to the contrary is, indeed, "overheated, frivolous, and disproportionate to the needs of the case." (Doc. No. 173 at 1.)

Second, the Magistrate Judge clearly has the discretion to limit the scope of discovery. While Rule 26 is broad, it is not limitless. It authorizes the discovery of

> any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case*, considering the importance of the issues at

> stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (emphasis added). The Magistrate Judge weighed these issues and reasonably concluded that the requested depositions were not reasonably calculated to lead to the discovery of admissible evidence.

The plaintiff insists that a second deposition of Robert Hartman is "legally required," but his original motion (Doc. No. 160) failed to provide good cause for a second deposition. The plaintiff further explained the basis for his motion during the hearing, but the Magistrate Judge's conclusion that a second deposition is unwarranted was well within his discretion.

Finally, the Magistrate Judge had no obligation to reconsider his original order when the plaintiff's Motion for Reconsideration simply rehashed arguments the plaintiff had already made and that were already addressed in the July 16 Order. The denial of that motion (Doc. No. 172) also did not constitute an abuse of discretion.

The plaintiff's Third Objection (Doc. No. 174) is **OVERRULED**, and the two underlying Orders (Doc. Nos. 171, 173) are **AFFIRMED**.

## IV. CONCLUSION

As set forth herein, the three sets of Objections (Doc. Nos. 129, 140, 174) are **OVERRULED** in their entirety, and the underlying non-dispositive Orders (Doc. Nos. 128, 139, 171, 173) are **AFFIRMED**. The plaintiff's Emergency Motion to Stay (Doc. No. 141) and an earlier Motion to Stay Enforcement (Doc. No. 113) are both **DENIED as moot**.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge